**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROBERTO MONDONEDO** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No.: **PJM 11-570** |
| | * | |
| **FRITO-LAY, INC.** | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Roberto Mondonedo, *pro se*, has filed this suit against his former employer, Frito-Lay, Inc. ("Frito-Lay"), alleging violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. For the following reasons, Frito-Lay's Motion for Summary Judgment [Paper No. 18] is **GRANTED**.

**I.**

Mondonedo worked at Frito-Lay's regional distribution center in Beltsville, Maryland as a Route Sales Associate from January 2007 until his termination on January 21, 2009. He operated a Frito-Lay-owned truck and delivered goods to merchants in the Washington, DC area. Instead of being assigned to a specific route, he was a "fill-in" who covered other employees' routes when they were off work.

Mondonedo worked under a union Collective Bargaining Agreement ("CBA") between Frito-Lay and the International Brotherhood of Teamsters, Local Union No. 639 ("Union"). The CBA outlined four steps for employee discipline—(1) Written Reminder, (2) Written Warning, (3) Final Written Warning, and (4) Termination. Depending on the situation, some of those steps could be repeated or omitted.

1

Over the course of his employment, Mondonedo was subject to multiple disciplinary actions, concluding with his termination.  On February 12, 2007, he was given a Written Warning following an accident in which he struck a parked car with his Frito-Lay truck.  Frito-Lay determined that the accident was "preventable."  On August 28, 2007, Mondonedo was given a Written Warning for violating company policy by not reporting within 24 hours of its occurrence a finger injury he sustained on the job.  Also on August 28, 2007, Mondonedo was given a Final Written Warning for poor job performance stemming from an incident that occurred between him and a Safeway employee at a Washington, DC Safeway store, after the store contacted Frito-Lay and asked that Mondonedo not be assigned to make any more deliveries to it.  On June 26, 2008, Mondonedo was given another Final Written Warning for poor job performance because he completed only fifty-one percent of total deliveries he was assigned for a specific week.

Finally, on December 29, 2008, Mondonedo had a second vehicle accident, deemed "preventable," when he backed his Frito-Lay truck into a parked car.  While there were no injuries, the parked car sustained some minor damage.  On January 5, 2009, Frito-Lay management met with Mondonedo and informed him that he was being suspended without pay through January 9, when a final decision on appropriate discipline would be made.  The Union immediately filed a grievance.  The following day, Frito-Lay Zone Business Manager Scott Martell drafted an e-mail to the Human Resources Director and Zones Sale Leader recommending that Mondonedo be terminated pursuant to the CBA.  Those individuals agreed with Martell's recommendation, and Martell prepared a termination letter to be given to Mondonedo on January 9, when he would be discharged.  On January 8, Frito-Lay Shop Steward Scott Boros called Mondonedo and confirmed that Mondonedo would be meeting with Martell the next day.  Mondonedo did not, at the time, indicate that he had any health problems.

At approximately five o'clock on the morning of January 9, Mondonedo called Dinisha Robinson, a Frito-Lay District Sales Leader, and informed her that he was not "feeling well," that he was going to see a doctor, and that he would let Frito-Lay know what the doctor determined.  Later on, Mondondeo left a message for Martell stating that he was "going on sick leave" and could not attend the meeting set for that day.

On January 9, Mondonedo did see Dr. Thomas Havell, who wrote Mondondeo a note stating: "Sick leave 1/9/09—1/23/09."[1]  On January 12, Mondonedo saw Dr. Vincent Desiderio, who wrote him another note, which said: "Off work 1/12/09—1/14/09."  Neither note indicated what ailment Mondonedo was suffering from; nor did either reveal anything else about his treatment or condition.  On January 15, Mondonedo faxed both doctor's notes to Frito-Lay.  He now alleges that high blood pressure and elevated blood sugar caused him to call in sick and seek medical attention, but he has adduced no evidence that in the relevant time frame he communicated this information to Frito-Lay or that Frito-Lay was otherwise aware of it.  Six days later, on January 21, Mondonedo returned to the Frito-Lay office and was formally terminated.

Mondonedo initiated this action in the Circuit Court for Prince George's County, claiming he was on FMLA leave when he was discharged and therefore Frito-Lay interfered with the exercise of his FMLA rights.  He also claims that Frito-Lay owes him compensation for earned vacation time.  Frito-Lay removed the case to this Court, and has now filed a Motion for Summary Judgment.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

---

[1] Frito-Lay claims that this note was illegible when it was received via fax.

R. CIV. P. 56(a).  The Supreme Court has clarified that this does not mean that any factual

dispute will defeat the motion: "By its very terms, this standard provides that the mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue

of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

 The court must "view the evidence in the light most favorable to . . . the nonmovant, and

draw all reasonable inferences in his favor without weighing the evidence or assessing the

witnesses' credibility."  *Baynard v. Malone*, 268 F.3d 228, 234-35.  The court, however, must

also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported

claims and defenses from proceeding to trial.'"  *Bouchat v. Baltimore Ravens Football Club,

Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir.

1993)).  "A party opposing a properly supported motion for summary judgment may not rest

upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts

showing that there is a genuine issue for trial."  *Bouchat*, 346 F.3d at 525 (alteration in original)

(internal quotation marks and citation omitted).  The mere existence of a "'scintilla of evidence'"

is not enough to frustrate a motion for summary judgment.  *Thompson v. Potomac Elec. Power

Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 187

(4th Cir. 1999)).  Moreover, the nonmoving party cannot create a genuine issue of material fact

through mere speculation or the building of one inference upon another.  *Beale v. Hardy*, 769

F.2d 213, 214 (4th Cir. 1985).

 Although *pro se* pleadings are "'held to less stringent standards than formal pleadings

drafted by lawyers,'"  *Allen v. Brodie*, 573 F. Supp. 87, 89 (D. Md. 1983) (quoting *Haines v.

Kerner*, 404 U.S. 519, 520-21 (1972)), they "must still set forth facts sufficient to withstand

summary judgment." *Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478, 480 n. 4 (D. Md. 2002) (citations omitted).

## III.

Mondonedo alleges that Frito-Lay unlawfully interfered with the exercise of his FMLA rights when it discharged him.  Specifically, he contends that Frito-Lay violated the FMLA by dismissing him while he was on sick leave.  Frito-Lay counters that Mondonedo was not on actual FMLA leave when the company terminated him, and therefore he has no actionable FMLA claim.  The Court agrees with Frito-Lay.

## A.

The FMLA entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons, *see* 29 U.S.C. § 2612(a)(1), and gives them the right to return to the same or an equivalent position after such absence.  *Id.* § 2614(a)(1); *see also Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006).  An employee is entitled to FMLA leave for, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).[2]  A "[s]erious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves" either "inpatient care in a hospital, hospice, or residential medical care facility," or "continuing treatment by a health care provider." *Id.* § 2611(11).  The regulations further define "continuing treatment by a health care provider" as follows:

> (i) A period of *incapacity* (*i.e.*, inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery

---

[2] "An employee is 'unable to perform the functions of the position' where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position . . . ." 29 C.F.R. § 825.115 (2008).

therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition that involves:

    (A) Treatment two or more times by a health care provider . . . ; or

    (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

    . . . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

    (A) Requires periodic visits for treatment by a health care provider . . . ;

    (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

    (C) May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114(a)(2) (2008).

To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: (1) he was an eligible employee, (2) his employer was covered by the Act, (3) he was entitled to leave under the FMLA, (4) he gave his employer adequate notice of his intention to take leave, and (5) the employer denied him FMLA benefits to which he was entitled. *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).  With respect to the fourth element, an employee need not expressly invoke the FMLA or assert rights under the Act to provide adequate notice.  *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 295 (4th Cir. 2009).  An employee, however, must provide sufficient information for the employer to determine whether the FMLA might apply to the request.  29 C.F.R. § 825.302(c), .303(b) (2008).[3]  The notice must inform the

---

[3] A new version of the regulations pertaining to adequate notice took effect on January 16, 2009, a few days before Mondonedo was formally terminated. *See* The Family Medical Leave Act of 1993, 73 Fed. Reg. 67,934 (Nov. 17, 2008). Because the notice he allegedly provide Frito-Lay—telephone calls on January 9 and faxes on January 15— as well as Frito-Lay's decision to discharge him, occurred before the 16th, the Court looks to the old version of the regulations. *See Robinson v. Overnite Transp. Co.*, No. 95-3067, 1997 WL 165416, at *7 n.4 (4th Cir. Apr. 9, 1997) (finding interim FMLA regulations applicable because employer's decision to terminate employee occurred prior to the release of the final regulations). The old regulations used different language to describe the notice requirement for leave that was "foreseeable" and where the need for FMLA leave was "not foreseeable." However, regardless of this difference, the same basic requirement obtained: the employee had to furnish enough information for his or her employer to determine whether the FMLA might apply to the leave request. *See Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001). The new version of the regulations retains this critical requirement, so whether the

employer that the employee's medical condition might be serious, as only a "serious medical condition" entitles an employee to FMLA leave. *See* 29 U.S.C. § 2612(a)(1)(D); *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 312 (7th Cir. 2006); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Although the employee need not name the statute, . . . he must provide information to suggest that his health condition could be serious.") (citations omitted). While an employer has an obligation to inquire as to whether an employee is seeking FMLA leave, *see* 29 C.F.R. § 825.302(c), .303(b) (2008),[4] this duty "is not triggered unless the employer, under the circumstances, could 'reasonably be expected to conclude [the plaintiff's] absence might have qualified for treatment under the FMLA.'" *Rodriguez*, 545 F. Supp. 2d at 519-20 (quoting *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997)) (alteration in original).

It is well-established that an employee simply calling in "sick" is insufficient to constitute adequate notice or even trigger the employer's obligation to investigate further. *Adams v. Wallenstein*, 814 F. Supp. 2d 516, 526 (D. Md. 2011); *Rodriguez*, 545 F. Supp. 2d at 518; *see also Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 785-86 (8th Cir. 2009); *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 981 (5th Cir. 1998); *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 409 (S.D.N.Y. 2007).[5] Doctor's notes accompanying such a call might provide adequate notice, but only if they indicate the seriousness of the employee's medical condition. *See De La Rama v. Illinois Dept. of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) ("Calling in sick without providing

---

Court considers the new or the old version, the analysis is essentially the same. *Compare* 29 C.F.R. 825.302-.303 (2008) *with* 29 C.F.R. 825.302-.303 (2011).

[4] Whether the leave an employee seeks is "foreseeable" or "not foreseeable," the employer's duty to inquire further applies. *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 519 (D. Md. 2008).

[5] The new version of the regulations governing an employee's notice requirements for unforeseeable FMLA leave make clear that "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.303(b) (2011).

additional information does not provide sufficient notice under the FMLA. . . . This is true even

if the employee provides her employer with a doctor's note if the note does not convey the

seriousness of her medical condition.") (citations omitted).

## B.

As an initial matter, it is questionable whether "high blood pressure and elevated blood

sugar" qualify as a "serious health condition" that made Mondonedo "unable to perform the

functions" of his delivery position and thus eligible for FMLA leave.  *See* 29 U.S.C. §

2612(a)(1)(D).  Assuming Mondonedo did have an FMLA-qualifying condition, there can be no

doubt that he did not give Frito-Lay adequate notice to trigger its obligations under the Act.  As a

matter of law, he failed to provide Frito-Lay with sufficient information to determine whether his

medical condition might be serious enough to qualify for FMLA leave.  Because Mondonedo

cannot show that he provided adequate notice, he cannot establish that Frito-Lay denied him

FMLA benefits to which he was entitled.

To recap his allegations: Mondonedo's communications to Dinisha Robinson and Scott

Martell on January 9 never indicated what his symptoms were, explained his condition, or

suggested how long he might be out of work.  At most, he informed Robinson at approximately

five o'clock in the morning that he was not "feeling well," was going to a doctor, and would let

Frito-Lay know what the doctor said.  The message he left for Martell was similarly vague.

Mondonedo told Martel without any elaboration that he was "going on sick leave" and could not

attend the meeting.  *See Adams*, 814 F. Supp. 2d at 526 (holding that an employee who simply

asked to be "put down for sick leave" did not put his employer on notice that FMLA leave may

be needed).

The doctor's notes Mondonedo faxed to Frito-Lay on January 15 did not provide further

clarification.  Doctor Havell's note simply stated: "Sick leave 1/9/09—1/23/09," and Doctor

Desiderio's said: "Off work 1/12/09—1/14/09."  Neither note said anything about Mondonedo's condition or treatment plan, if any.  Nor did Mondonedo send Frito-Lay additional documents or call management to provide an update about his health.[6]  Nor is there any evidence that Mondonedo or his doctors informed Frito-Lay that he had high blood pressure and elevated blood sugar levels.  Although Mondonedo may have done more than just call in "sick," he did not give Frito-Lay enough information to determine whether he might have a serious medical condition.  Frito-Lay could not therefore have been reasonably expected to conclude that Mondonedo may have qualified for FMLA leave.  Indeed, an employee must furnish "some level of detail regarding the nature of the illness and the likely duration of the absence such that the employer is able to reasonably conclude that the absence may qualify as FMLA leave." *Rodriguez*, 545 F. Supp. 2d at 522 (citations omitted).  Employers such as Frito-Lay are "'not required to be clairvoyant.'"  *Brown*, 488 F. Supp. 2d at 409 (quoting *Johnson v. Primerica*, No. 95 Civ. 4869, 1996 WL 34148, at *5 (S.D.N.Y. Jan. 30, 1996)).

Because Mondonedo failed to give Frito-Lay proper notice, he was not protected by the FMLA when Frito-Lay terminated him on January 21, 2011.  *See Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011).  Frito-Lay did not violate the FLMA when it discharged Mondonedo and is entitled to judgment as a matter of law.

## C.

Alternatively, even if Mondonedo was on FMLA leave when formally discharged, his claim still fails since Frito-Lay would have terminated him regardless of whether or not he was on leave.  Nothing in the FMLA entitles employees to any right, benefit, or position other than what they would have been entitled to had they not taken any leave.  29 U.S.C. § 2614(a)(3)(B);

---

[6] Nothing prevented Mondonedo from supplying this additional information.

*Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 547 (4th Cir. 2006). "[A]n employer can avoid liability under the FMLA if it can prove that it 'would not have retained an employee had the employee not been on FMLA leave.'" *Yashenko*, 446 F.3d at 547 (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)). In this case, the evidence is overwhelming that Frito-Lay had reached its decision to discharge Mondonedo *before* he allegedly sought FMLA leave.[7] Martell was set to meet with him on January 9 and deliver a termination letter. Thus, but for the fact that he called in sick, Mondonedo would have been fired on that day. Given his history of disciplinary actions, Mondonedo knew it was likely, even probable, he would be fired. Telling Frito-Lay on the verge of his scheduled meeting did not therefore transform his eventual discharge into an FMLA violation. *See id.* at 547-48 (rejecting plaintiff's argument that a poorly performing employee must be restored to his prior position when he takes leave before his employer can discharge him).

## IV.

Mondonedo also contends that Frito-Lay owes him compensation for two weeks of earned but unpaid vacation leave. He raised this exact claim in a civil suit he filed against Frito-Lay in the District Court of Maryland for Prince George's County. That case went to trial after which the court entered final judgment in favor of Mondonedo in the amount of $778 (one-week of vacation pay plus court costs). The doctrine of claim preclusion, or *res judicata*, bars his attempt to re-litigate the issue here. *See Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161-62 (4th Cir. 2008).

## V.

---

[7] Frito-Lay gave Mondonedo a Final Written Warning on June 26, 2008 for poor job performance. He had a "preventable" vehicle accident on December 29, 2008, and pursuant to the CBA, the next step in employee discipline was "Termination."

For the foregoing reasons, the Court **GRANTS** Defendant Frito-Lay's Motion for Summary Judgment [Paper No. 18] as to all Counts.  Final Judgment will be entered in favor of Frito-Lay and against Mondonedo and the case will be **CLOSED**.

A separate Order will **ISSUE**.

_____/s/_____

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**May 7, 2012**